## Condemnation of 4150-52 E. Thompson St.

*Alan K. Silberstein,* for Commonwealth.

*H. Donald Busch,* for Engines, Inc.

TAKIFF, J., November 28, 1973.—On January 19, 1973, the Commonwealth of Pennsylvania Department of Transportation (PennDOT) filed a declaration of taking, condemning the property situate at 4150-52 East Thompson Street to provide access to the Betsy Ross Bridge. Notice of the condemnation was sent to Engines, Inc., the owner of the premises, by letter dated January 26, 1973. Thereafter, the condemnee filed timely preliminary objections to the declaration of taking, alleging that the condemnation was unlawful due to PennDOT's alleged failure to comply with section 205(c)(4) of the Uniform Relocation Assistance and Real Property Acquisitions Policies Act of 1970, 42 U.S.C. §4601, et seq., and sections 25.75 and 25.93 of the regulations issued by the United States Department of Transportation, 49 C.F.R., part 25. PennDOT filed an answer which alleged compliance with these Federal requirements and asserted that even if it had not so complied, that fact would not affect the legality of the condemnation. On August 21, 1973, the court,

per Takiff, J., denied PennDOT's motion to strike and ordered depositions sur preliminary objections to be taken and filed within 30 days. The matter is now before the court on preliminary objections, answer and depositions.

Section 205(c)(4) of the Uniform Relocation and Real Property Acquisitions Act, 42 U.S.C. §4625(c)(4), provides:

(c) Each relocation assistance advisory program required by subsection (a) of this section shall include such measures, facilities or services as may be necessary or appropriate in order to—. . .

"(4) assist a displaced person displaced from his business or farm operation in obtaining and becoming established in a suitable replacement location."

The regulations implementing the act further detail the requirements to be met by such relocation programs: Section 25.75 of Title 49 C.F.R. reads:

"Each agency concerned shall carry out a relocation assistance advisory program. The program shall provide for—

"(a) Explaining to displaced persons the relocation assistance and payments that are available;

"(b) Assisting displaced persons to complete applications required for payments;

"(c) Determining the needs of displaced persons for relocation assistance;

"(d) Informing displaced persons as to the availability and costs of comparable replacement dwellings and comparable locations for displaced businesses and farm operations;

"(e) Assisting each displaced person to obtain and move to a comparable replacement dwelling;

"(f) Informing displaced persons as to Federal and State housing programs; and

"(g) Providing counsel and advice to displaced

persons that will minimize the hardships associated with adjusting to a new location.

49 C.F.R. section 25.93 entitled "Information for displaced persons" provides, in pertinent part:

"(a) The agency concerned shall deliver to each displaced person either in person or by certified mail, return receipt requested—

"(1) A brochure explaining the relocation assistance advisory program."

The depositions submitted establish that Penn-DOT's relocation worker, Bill Schultz, spoke with the Vice President and General Manager of Engines, Inc., S. Penn Thomas, within two weeks after the declaration of taking was filed. At that time, Thomas was given a PennDOT brochure entitled "Relocation Assistance Information" which described the benefits available and procedures to be followed. Thomas stated on page 13 of his deposition that:

" [H]e [Schultz] took down our present facilities, what our requirements were, that he would be in contact with realtors to attempt, and you have the realtors, attempt to find out facilities for me. He additionally, spoke of the assistance that could be given on the cost of moving and the procedures involved."

Thomas also testified that a number of realtors called him at Schultz' request and offered relocation suggestions and that he went with them to examine certain sites. Although nothing came of these contacts, Engines, Inc., on its own initiative subsequently found a relocation site which it expected to be ready about the middle of March, 1974.

Thus, it appears that PennDOT has substantially complied with the relocation requirements outlined above. However, even if PennDOT had not satisfied the above requirements that would not affect the legitimacy or validity of the taking.

The act defines a "displaced person" in section 101(6), 42 U.S.C. §4601(6):

"The term 'displaced person' means any person who, . . . moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance; and solely for the purposes of sections 4622(a) and (b) and 4625 of this title, as a result of the acquisition of or as the result of the written order of the acquiring agency to vacate other real property, on which such person conducts a business or farm operation, for such program or project."

Section 25.11 of Title 49 C.F.R. entitled "Displaced person; qualifications" provides, in part:

"(c) A person does not qualify as a displaced person under paragraph (a)(1) or (2) of this section until—

"(1) The agency concerned becomes entitled to possession of the real property under an agreement or a court order in a condemnation proceeding for acquiring the property; or

"(2) The owner conveys title to the real property to the agency concerned; or

"(3) The owner and the agency concerned enter into a contract for the purchase of the real property."

The brochure issued by PennDOT, attached to Thomas' deposition, indicates that one is not considered a displaced person unless the property is acquired by the agency.

The thrust of the statute and the regulations is that no right to relocation assistance arises until the property is, in fact, acquired by the agency through condemnation or sale or until a contract for purchase of the property is signed. There is no entitlement to

relocation benefits or assistance unless and until the property is acquired by the agency. Thus, the argument that the condemnation is *unlawful* because the relocation provisions were not followed cannot be logically asserted, since condemnation, or sale, is a prerequisite to eligibility for relocation benefits.

The preliminary objections to the declaration of taking are overruled.